## JAMES T. CAMPBELL *vs.* THE HOME INSURANCE COMPANY.

H., a corporation chartered by, and having its principal place of business in, New York, issued in South Carolina, through its agency there, to C., a citizen and resident of South Carolina, a fire policy of insurance on property in Charleston. A loss, within the terms of the policy, occurred in November, 1857, and the amount thereof was adjusted, by compromise, on 1st April, 1858. In January, 1858, two creditors of C., residing in New York, commenced actions against him, in that State, under the New York Code of Procedure, and sued out warrants of attachment against his property. C. was not made a party in either action by personal service in New York, but was made a party, as the Code directs, in one case, by publication of the summons, and in the other, by personal service thereof in South Carolina. C. did not appear in either action, and judgments therein were entered against him, in the usual course of procedure, according to the New York practice. In this action, in South Carolina, by C. against H., to recover the amount of the loss, the defence was, payment to the Sheriff in New York, after a seizure of the debt by him under the warrants of attachment; and, to sustain the defence, exemplifications of the records in the action and of the warrants of attachment were produced, but the returns to the warrants did not show that any levy of the debt, or other property of C., was made, nor did the fact of payment appear anywhere in the proceedings:

*Held,* That it was competent for H. to prove, by parol, that the warrants of attachment were levied by the Sheriff on the debt, and that H. paid it to the Sheriff, under the levies, after executions on the judgments had been entered with the Sheriff:

*Held,* further, That the debt due by H. to C., under the policy of insurance, was liable, under the laws of New York, to seizure, in the hands of H., under a warrant of attachment against the property of C., and that it made no difference, in this respect, that the preliminary proofs, required by the conditions of the policy, had not been furnished when the seizure was made.

The sovereign jurisdiction of a State includes the power to appropriate debts due by its citizens to non-residents, to the payment of debts due by such non-residents to other citizens of the State, and to prescribe the remedial means, or judicial proceedings, by which such appropriations may be made; and when the proceedings in an action for that purpose are in conformity to the laws of the State, they are final and conclusive upon the non-resident so far as the fund itself is concerned, though he was not served with process, and did not appear in the action.

Sec. 1 of Article IV of the Constitution of the United States, declaring that full faith and credit shall be given in each State to the "records and judicial proceedings of every other State," and that Congress may prescribe the manner in which such records and proceedings shall be proved, and the effect thereof, embraces two classes of cases: (1.) Records; and, (2) Judicial proceedings not of record; and, Congress having omitted to prescribe the manner in which proceedings of the second class shall be authenticated, they may be proved by parol, according to the common law rules of evidence.

Where a judicial proceeding, though consisting chiefly of matter of record, yet contains matters which rest in parol, so much thereof as is matter of record can only be proved by the record or an authenticated copy; but so much thereof as rests in parol may be proved by oral evidence.

Under the New York Code of Procedure, a warrant of attachment is merely an accessory or incident of the action. If not returned before judgment, it is merged in the execution. The fact of a levy or seizure under it is not jurisdictional. And the practice further stated and reviewed, and the conclusion reached, that the facts of levy or seizure by the Sheriff, under the warrant,

and of payment under the levy, or seizure after execution lodged with the Sheriff, are matters resting in parol, which may be proved by evidence *aliunde.*

A proceeding against an absent debtor by action and attachment, under the New York Code of Procedure, is entitled, under the Constitution of the United States, to full faith and credit in every other State.

BEFORE GLOVER, J., AT CHARLESTON, JUNE TERM, 1868.

This was an action on a policy of insurance against fire, dated May 27, 1857, and issued by the defendant to the plaintiff, in Charleston, South Carolina, on property in that city. The defendant is a corporation, created under the laws of New York, and having its principal place of business in the city of New York, but having, in the years 1857 and 1858, an agency in Charleston, by which the policy was granted. The plaintiff, in those years, was a citizen and resident of South Carolina.

The loss occurred in November, 1857. The amount claimed by the plaintiff was $2,000, but it was fixed, by a compromise made 1st April, 1858, in Charleston, at $1,600. This action was commenced October 2, 1858, to recover that sum and interest.

The defence was, that the debt due by the defendant to the plaintiff, for which the action was brought, was seized in New York, in the hands of the defendant, in January, 1858, under two warrants of attachment, issued in that State, against the plaintiff, and that, in May, 1858, the defendant paid the debt, under the seizure, to the Sheriff, who had made it.

The plaintiff having proved his case, the defendant, to sustain its defence, produced, in evidence, the exemplifications of two records in the Supreme Court of the City and County of New York. These were actions under the New York Code of Procedure against the plaintiff—one by Dennis Carolin and James A. Carolin, and the other by Charles Nourse. They were commenced by summons, dated January 20, 1858, and were for money demands on contracts. The summons, in Carolins' case, was served by publication, and that in Nourse's case, by personal service, on the plaintiff, in Charleston, South Carolina, on 3d March, 1858. Judgments were entered about 1st May, 1858, and the proceedings in both actions were regular, according to the provisions of the New York Code of Procedure in cases of absent defendants having property within the State. The defendant also produced, in evidence, the exemplifications of two warrants of attachment against the property of the plaintiff, issued in the same cases, and dated January 21st, 1859.

These warrants were directed to the Sheriff of the City and County of New York; they were marked as "Received, January 21, 1858," by the Sheriff, and his return to each was as follows: "Merged in judgment, and execution issued May 3d, 1858: J. C. Willett, Sheriff."

The defendant then offered in evidence the depositions, taken by commission, of Frederick L. Vultee, to prove that he, the witness, was the Deputy Sheriff, in whose hands the warrants of attachment were placed; that on 21st January, 1858, he levied both warrants on the debt due by defendant to plaintiff; that executions on the judgments were entered in the Sheriff's office, on the 3d May, 1858; that on the 25th May, 1858, the defendant paid to the Sheriff $1,597.89, the aggregate amount of the executions, inclusive of interest and Sheriff's fees; and that the executions were thereupon marked "Satisfied: J. C. Willet." The depositions of other witnesses, to prove the seizure under the warrants and payment to the Sheriff, were also offered by defendant. His Honor, for the reason stated in his report, excluded this evidence.

The defendant also offered in evidence depositions, taken by commission, of attorneys and counsellors of the New York Courts, to prove, generally, what was the law of New York and the practice of the Courts of that State, in reference to proceedings by attachment; and, specifically, that the Supreme Court of the City and County of New York was a Court of Record, having general original jurisdiction in cases of attachment; and that the proceedings in the cases of Carolins and Nourse, against the plaintiff, were regular, and in conformity to the directions of the New York Code of Procedure. The substance of this evidence is recited in the judgment of the Court.

It was proved that Dennis Carolin, James A. Carolin, and Charles Nourse, were citizens and residents of New York, in the year 1858.

The report of His Honor the presiding Judge is as follows:

"This action was commenced October 2, 1858, on a policy of insurance, to recover for a loss by fire. The policy is dated May 27, 1857. The fire occurred November, 1857, and an adjustment or compromise was effected April 1, 1858; and April 6, 1858, James H. Taylor, defendants' agent, informed them of the compromise. The defendants did business in New York, where Carolin and Nourse, it was alleged, issued an attachment, January, 1858, against plaintiff, and served copies on the defendants, as garnishees; that

judgment was rendered on this attachment, and that the same was satisfied by payment to the Sheriff of New York. The liability of defendants was not denied, but the defence relied upon was, that the amount paid on the attachment in New York, in which defendants were garnishees, should be allowed to the extent of said payment in satisfaction of plaintiff's claim. Volumes of evidence, and the statute law of New York, together with the opinions of jurisconsults, were offered; but it will be necessary only briefly to refer to either, and only so far as the grounds of appeal may render it necessary.

" The defendant offered in evidence an exemplification of judgment in attachment rendered in New York against them as garnishees. I was of opinion that the exemplification did not show a valid judgment, as it did not appear that defendants were made parties to the proceedings by the service of warrants of attachment on them; and I held that evidence *aliunde* was inadmissible to prove the fact of service; and the jury, under my instruction on this point, found for the plaintiff. If, in this, there was error, a new trial should be granted. It appeared to me that the force and effect of a judgment of a Court of another State, either as the foundation of an action, or as evidence, must be judged of by the inspection of the proceedings; and, if it appears that the defendant was not made a party for want of service, or that the Court had no jurisdiction of the person or the cause, the judgment possesses no validity, and that parol evidence, to show service or jurisdiction, is inadmissible (*Miller* vs. *Miller*, 1 Bail., 242.) If the exemplification does not show service, it would be dangerous in practice to allow a party to supply the omission by parol evidence. To a plea of *nul tiel record*, the only reply is the record, with a prayer that it be inspected, and evidence to supply defects is not admissible.

" In the progress of the trial, evidence was admitted in proof of the service; but the effect of it was not perceived until the exemplification was discussed and the point was made.

" The plaintiff's counsel had commenced to state the points which he intended to make and argue, and the law upon which he relied; but, after some conversation with defendants' counsel, he said that he did so from courtesy, and did not acknowledge the right of defendants' counsel to compel the statements. I am not advised of any rule which enforces such a duty. It is very seldom that counsel, entitled to the reply, refuses to state his points and authorities, and, as a courtesy, is better in the observance than the breach."

The defendant appealed, and now moved this Court for a new trial, on the grounds:

1. Because His Honor charged the jury that the exemplifications of the judgments, not containing within themselves proof of the service of the warrants of attachment, the defect could not be supplied by parol proof of the fact of such service, and that they should not regard such proof, although he had admitted, as competent, proof of such service to be introduced and to go to the jury.

2. Because His Honor excluded all the material testimony sought from the jurisconsults examined, as to what was the law of New York on the subject of attachments and proceedings therein, and in relation to the practice of the Courts.

3. Because, although it was proved—and allowed by the Judge in proof—by the evidence of Mr. Vanderpool and Mr. Davidson, in answer to one of the interrogatories, as follow, to wit: "That there is usually a return made by the Sheriff serving the order of attachment. It is made at any stage of the proceedings which may suit the convenience of the officer, or any of the parties. In practice but little attention is paid to the making of this return, a compliance with the statute in this respect not being regarded as jurisdictional, and a non-compliance being regarded and treated as an irregularity merely;" yet His Honor refused to charge the jury that they might regard that opinion, and be governed by it, as proof of the construction of the law, and of practice in such cases, in New York.

4. That Messrs. Vanderpool and Davidson proved that, although the service of the attachment on the defendants did not appear in the exemplification, yet, in their opinion of the law of New York, if it could be proved *aliunde,* the liability of the defendant was complete; and yet the Judge excluded their testimony, and, furthermore, excluded the proof by the Deputy Sheriff, who served the warrants, of the service actually made by himself.

5. Because the Judge ruled that the plaintiff's counsel, who had the right, in the state of the pleadings, to open and reply in argument, was not bound to state the points he intended to make in his argument, and give the law relied on to sustain them, but might reserve such statement of points and authorities until he came to reply to the argument of the defendants' counsel.

*Simons & Simons,* for appellant.

*Wilkinson & Gilchrist,* contra.

The opinion of the Court was delivered by

WILLARD, A. J. The defendants appeal, and show the following state of facts: Plaintiff, a resident of South Carolina, sued on a policy of insurance issued by defendants, a foreign corporation, created under the laws of the State of New York, and having their principal place of business in the city of New York, with an agency within this State. The property⁑ insured was within this State. A loss was established within the policy, and an adjustment, by compromise, effected April 1st, 1858. Previous to this adjustment, and in January, 1858, D. Carolin and James A. Carolin, claiming to be creditors of plaintiff, commenced an action against him in the Supreme Court of the State of New York, Campbell being absent from that State, and took out an attachment against his property within the City and County of New York. A similar suit and attachment proceeding was instituted in the same Court, and at or about the same time, by Charles Nourse, claiming, likewise, to be a creditor of Campbell. The plaintiffs in both attachment suits were residents of the State of New York. Judgments were obtained in the suits of Carolin and Nourse, respectively, and executions issued and satisfied out of money paid by the present defendants, and claimed by them to constitute a credit in their favor, as against the present plaintiff.

On the production, before the Circuit Court, of the exemplified proceedings in the New York suits, it appeared that Campbell was not personally served with process within the State of New York. Defendants undertook to establish a credit in their favor by proof of the attachments, and of a levy under them, and a payment, in pursuance thereof, of the sum in dispute. Exemplified records of the attachment proceedings were produced, distinct and separate from the proper judgment records in the suit in the course of which the attachments were issued, following the practice of New York, as will be more fully explained hereafter. The return endorsed ·upon the attachments did not show that the funds due to Campbell had been seized in the hands of the present defendants, and they, accordingly, offered parol evidence, taken under a commission issued in this suit to the State of New York, of the fact of a levy upon the debt due from them to the present plaintiff, and the payment thereunder of the sum in dispute into the hands of the Sheriff of the City and County of New York. The plaintiff objected to parol evidence of these facts being admitted, contending that the fact of

a levy and payment could only be made out by matter appearing of record, and that the introduction of proof *aliunde* was inadmissible. The Judge sustained the objection, holding " that the exemplification did not show a valid judgment, as it did not appear that defendants were made parties to the proceedings by the service of warrants of attachment on them," " and that evidence *aliunde* was inadmissible to prove the fact of service;" and the jury, under this instruction, found for the plaintiff.

The first, third and fourth grounds of appeal rest upon this instruction, and will be considered together.

The subject of controversy is a *chose in action*, a debt admitted as due by one domiciled within the State of New York to a citizen of South Carolina. The creditors of Campbell, being citizens of the State of New York, were entitled, by the laws of that State, to pursue the fund in question, in order to obtain satisfaction of their demands. So far as it concerned the appropriation of that specified fund, the sovereign jurisdiction of New York extended to the adjudication of all rights pertaining thereto as between the domestic creditors, the absent debtor and the holder of the fund, and, also, to the designation of the remedial means by which such appropriation should be effected.—Story Confl. Laws, § 549. The fund itself became, under the operation of the laws of New York, assets for the satisfaction of domestic debts, and, as such, was specifically amenable to the domestic jurisdiction.

According to principles of public law, especially recognized by South Carolina and New York, as well as under the operation of Art. IV, Sec. 1, of the Constitution of the United States, proceedings for the satisfaction of the New York creditors, out of funds within that State, if pursued in conformity to the authority of that State, were final and conclusive upon the debtor resident in South Carolina, although not served with process, and though he did not appear and defend therein. It is true that, in order to render the judgment obtained in New York operative in South Carolina, for the purpose of further satisfaction here, it was necessary that it should operate *in personam*, which can only take place when the defendant has been subjected to the jurisdiction of the Court rendering the judgment, either by process served within its territorial jurisdiction or by the voluntary appearance of the defendant for the purpose of a general defence. Yet, as it is not sought, in the present suit, to employ the judgment for any other purpose than to evidence transactions fully completed within the State of New

York, it is unnecessary to consider what is due to render the proceedings in question binding *in personam.*

It follows, therefore, that we have only to consider the legal consequences and effects of the attachment proceedings under the laws of New York, and to give effect to Art. IV, Sec. 1, of the Constitution of the United States, by allowing the same effects and consequences within this State.

The language of the Constitution is as follows: " Full faith and credit shall be given in each State to the public Acts, records and judicial proceedings of every other State, and the Congress may, by general laws, prescribe the manner in which such Acts, records and proceedings shall be proved, and the effect thereof."—Con. U. S., Art. IV, Sec. 1. Congress has exercised this authority to the extent of prescribing the mode in which records shall be authenticated, (Act 1790, 1 Stat., 122,) but has not defined the mode of proving such matters as rest in parol. Matters of record must be proved by the production of the record, or that which is made, by law, of equal import with the record itself, namely : a duly authenticated copy. Matters resting in parol must be proved by parol.

Judicial proceedings, which, from their nature, cannot be proved in the manner prescribed by the Act of Congress, are, nevertheless, in this State, held entitled to full faith and credit under the Constitution, and are to be proved in accordance with the rules of the common law. This was settled in *Lawrine* vs. *Gaultney,* (Cheves, 7,) although, when the previous case of *Clark* vs. *Parsons,* (Rice, 16,) was decided, the Court was not prepared to go so far. The judgment considered in *Lawrine* vs. *Gaultney* was rendered by a Justice of the Peace of North Carolina, and, not emanating from a Court of Record, was not capable of being evidenced by that which, in strictness, was to be regarded as a record. This being determined in a case where it was sought to give the judgment effect *in personam,* is applicable, with still greater force, to a case where the only effect sought is that which ought to be allowed to a judgment *in rem.* It was evidently the intent of the Constitution, as expressed by the phrase " records and judicial proceedings," to include proceedings that could not properly be described as " records," or, in other words, that could only be evidenced by matter of parol.

Having thus distinguished two classes of cases to which the Constitution relates, namely : proceedings capable of being wholly evidenced by matter of record, which ought to be authenticated in

accordance with the Act of Congress, and proceedings which cannot be so evidenced, but are to be proven on the principles of the common law, there remains to be considered a class, embracing the case under consideration, where certain matters are susceptible of proof by means of an authenticated record, and others demand a different form of proof. It is obvious that the principles that have been stated as governing the two first named classes control the one last named. That which ought to be proven by matter of record cannot be evidenced by proof of less dignity, and that which cannot be so proved is to be evidenced in the best manner that the nature of the case will admit of.

The question, then, arises, whether the facts of a levy of the attachments and satisfaction by payment under it, ought to be evidenced by a record authenticated under the Act of Congress. This question depends wholly upon the laws of New York; for rules of evidence arise out of the nature of the thing evidenced, and that, in the present instance, is a proceeding, the creature of the laws of New York. Are these facts properly matters of record, under the laws of New York?

The attachments in question were taken under the Code of Procedure of that State. Their system of practice has materially modified the foreign attachment, as understood in this State, and as the same formerly existed in the State of New York. The attachment is not the initial process of a suit or proceeding, but is a remedial writ, issued in the course of an action at law, and accessory to it.—N. Y. Code of Procedure, Section 227. It is not the foundation of the record, nor the ground of jurisdiction, but an incident, and accessory merely. The action in the course of which the attachment issues is, in form and essence, a suit at law, in which the non-resident debtor is the only party defendant. The jurisdiction of the Court, so far as the laws of New York are concerned, depends upon proof of the non-residence of the defendant, coupled with the fact that he has property within the State. This proof is brought before the Court by affidavit, on a motion for an order of publication of the summons, the real initial process in the case. The order of publication may be executed, either by publishing the summons in certain public newspapers, and depositing a copy of the same in the post office, addressed to the defendant at his place of residence, and pre-paying the postage, or, at the option or convenience of the plaintiff, by the actual service of the summons upon the defendant personally, though without the State. The for-

mer course was pursued in Carolins' case, the latter in Nourse's case, the summons having been served on the defendant in Charleston. After due service is effected in the manner before stated, a complaint, the equivalent of a declaration, is filed, and unless the defendant appears and pleads to it in due time, a reference to ascertain the indebtedness of the defendant is ordered, as upon a default for want of answer, and, on the coming in of the referee's report, ascertaining a sum due, judgment is given against the defendant. Proof of the levying of an attachment is not necessary to authorize the entry of judgment. Execution is issued on this judgment, and satisfied out of property taken under the attachment, as well as out of all other property of the defendant found within the State.

The attachment is either issued at the same time with the summons or subsequently. It directs the Sheriff to seize and hold, subject to any judgment that may be recovered in the action, all property of the defendant within the County. Neither in the attachment, nor in the affidavit on which it issues, is there required to be any specification of what the property consists of, nor in whose hands held. It may be levied on any property of the defendant which the Sheriff may be able to find within his County. At no stage of the proceedings does the person holding the defendant's property appear in any character upon the record. He has no opportunity to plead and defend otherwise than in the name of the absent debtor. He cannot arrest the proceeding or dissolve the attachment otherwise than in the name of the defendant of record. The attachment may be levied on the choses in action of the non-resident, and, in such cases, is levied by delivering a copy thereof to the person owing such debt, who is bound, if the debt is acknowledged, to furnish the Sheriff with a certificate of the amount due.

If the debt is denied, the Sheriff is put to his action against the person alleged to be indebted to the non-resident debtor, in which action such person appears and defends, as to any right that he may possess, as against the Sheriff claiming in right of the attaching creditors. When the warrant of attachment is fully executed or discharged, the Sheriff is required to return it with his proceedings thereon.

It frequently happens that the attachment cannot be fully executed prior to the issuing of the execution. For, it is not only necessary to levy, but to reduce to possession, in order fully to execute its mandate. If the person sought to be charged, under the attachment, contradicts the fact that he has property of, or is in-

debted to, the non-resident debtor, and an action has to be commenced, it is evident that the attachment may remain, in part, unexecuted at the issuing of final execution, especially when the non-resident makes no defence. It also may happen, as in the present case, that the Sheriff, after levying the attachment, suffers the property to remain in the hands of the person with whom it was found, having obtained constructive possession. In such case the attachment may remain, in part, unexecuted at the time the execution is deposited in the Sheriff's hands. The moment the execution is lodged the attachment is merged, the provisional process being displaced by the final, and the Sheriff proceeds to execute the judgment, and makes his return of execution accordingly. The attachment in the case supposed is returned as merged in the execution. This was the course of practice adopted by the Sheriff in the cases under consideration, and is, undoubtedly, conformable to the practice of that State. The attachment having been returned according to the fact, it is not easy to see what more could be demanded.

It seems to have been supposed by counsel that there was some jurisdictional necessity of having the fact of a seizure in the hands of the present defendants appear as matter of record. But this was evidently based upon the idea that the attachment, as existing under the New York Code of Procedure, was a special statute remedy, in derogation of the common law, subject to a strict rule of construction, and in which the jurisdiction of the Court depended upon a return showing property seized under the attachment. This is an entire misconception of the nature of the proceeding. The Supreme Court of New York is a Court of Record of general original jurisdiction, and the proceeding before it being an action in the ordinary form, all the intendments are to be allowed to that Court appropriate to cases in the usual course of law. The fact that the property in dispute was found in the hands of the present defendants, was not a fact at all material to be known as matter of record evidence between the parties to the attachment suits. The present defendants had no control over the record, and no means of placing on it any fact necessary for their protection, and it would violate the principles of justice to make their protection depend upon the existence of a record to which they are strangers. It follows, that the levy and payment of the amount in dispute could not properly appear as matter of record, and that, upon principles of the common law, should be shown by the best evidence the

nature of the case admitted of, and that was the testimony of the officer who served the writ, and others cognizant of the facts. The Circuit Judge erred in his instructions to the jury, inasmuch as he refused due weight to the parol testimony adduced by the defendants, relative to the facts of the levy of the attachment and the payment of the defendants of the sum in dispute thereunder.

Having considered the question of proofs raised by the rulings of the Circuit Judge, it remains to notice certain objections going to the validity of the attachment proceedings themselves.

The two principal objections are, in substance, as follows: First, that the subject of the attachments was not a debt due in the State of New York, but was a contract made in South Carolina, contingent and immature, and, therefore, not the subject of attachment proceedings in the former State; and, second, that the record produced does not disclose such a proceeding, by foreign attachment, as can be recognized in the Courts of this State.

The duty of enforcing obligations rests, primarily, on the Court having jurisdiction of the person bound by such obligations. The superior efficacy of the remedy, when the person of the defendant is actually subjected to the jurisdiction of the Court, instead of being reached, indirectly, by. means of duress laid upon his property, and the manifest justice of putting a defendant to answer where a defence can, ordinarily, be most conveniently made,.have ascribed to the forum of the domicil, or residence, of the defendant, a peculiar fitness to determine controversies to which he may be a party. This principle extends itself to corporate as well as natural persons; for, although their appearance is not strictly personal, still the means of compelling corporate action are most abundant in the country under whose laws the corporation has its legal existence. This right, though undoubted, is not, however, exclusive; as, under peculiar conditions, the Courts of States or countries other than that of the defendant's domicil, or residence, may acquire jurisdiction both of his property and his person. The same may be said of bodies corporate, though, from their intangible character, a personal jurisdiction cannot always be obtained out of the country under whose laws they exist. This defect is remedied by provisions of law, such as were referred to by counsel as existing in this State, in virtue of which certain foreign corporations are required, before being permitted to transact business here, to subject themselves to local regulations, by which, among other things, liability to be sued here is secured.—12 Stat., 563.

Such regulations have the effect to place natural persons and corporations on the same footing, in regard to liability to suit, outside the forum of their domicil. This casual liability to suit elsewhere has never created a doubt as to the right and propriety of pursuing the debtor in that forum. The plaintiff had an undoubted right to prosecute the defendants in the Courts of New York, and, under the laws of that State, it was competent for his creditors to intervene, as the plaintiff himself might have intervened, to enforce such obligation, *pro tanto,* to the extent of satisfying their claims against him.

The cases cited in support of the objection under consideration, so far as it is based on the competency of the Courts of this State to enforce the obligations of the plaintiff's policy of insurance, go to this extent only; they hold that, for certain purposes, a corporation may be deemed present in a State foreign to that under which it holds its legal existence, so as to subject it to local laws and jurisdictions within such foreign State; but they do not sustain any proposition that will go to limit the forum of domicil in favor of the jurisdiction of such a foreign State.

In reference to the foregoing principles, it makes no difference whether the contract out of which the obligation springs was made at home or abroad. That circumstance may have an influence in shaping the obligation, but none in establishing any superiority of claim to jurisdiction in the country where it was made over the domicil of the contracting party.

The objection that the debt was not due, in consequence of the preliminary proofs not having been duly presented, is untenable. The clause of the policy, demanding preliminary proofs, was intended solely for the benefit of the insurer. The insured had no interest in the performance of that act sufficient to sustain a claim that he had been prejudiced by their waiving such proofs in behalf of his creditors. The cases cited to this point only show that the creditors had no right to compel a waiver of the condition of the contract in their favor; but leave the right of the garnishee to waive those conditions unquestioned.

The second objection is equally untenable. The duty imposed upon the Courts of this State to respect judicial transactions, happening within a competent foreign jurisdiction, does not depend upon any technical peculiarity of the remedy, known as a foreign attachment, but upon the terms of the Constitution of the United States, and in cases to which that instrument does not extend, on

the principles of international comity, the bond of civilized national society.

The well settled rule that, to give to a judgment extra territorial efficacy, it must have been pronounced by a Court having jurisdiction of the case, obtained either by personal service of the defendant within the jurisdiction of the Court, or by an actual seizure of his goods, is not in conflict with the present position. That rule rests on a principle of natural justice, and is of vital, rather than of technical application. Had there been no actual seizure of the plaintiff's property to sustain, on the principles of international law, the claim of the Supreme Court of New York to jurisdiction of the cases, a question might have arisen under the rule just stated; but, in the present case, the property appears to have been actually attached in time to enable the plaintiff, or his agent in New York, to intervene in the suit for their protection. It is not, therefore, a case to apply a rule resting on abstract justice, and not on merely technical grounds.

Examining the second ground of appeal in connection with the report of the Circuit Judge, it is left in uncertainty what was the precise ruling in reference to the evidence obtained by the examination of counsel as to the laws of New York under the commission. It is not important, however, to look further into this part of the case, as the view previously presented disposes of the case.

The fifth ground of appeal is unaccompanied by any statement of facts showing that the result of the trial was injuriously affected by the alleged error in the decision of the Judge as to the duty of the plaintiff to disclose the grounds on which he rested his case. We cannot assume that any unfair practice existed on the part of the counsel for the plaintiff, nor that the Judge sanctioned any such course. The matter raised by this ground of appeal being, therefore, immaterial, will not be considered..

A new trial is ordered.

*Moses,* C. J., concurred.